I respectfully dissent. An examination of the material submitted with this petition makes plain that the trial court thoroughly and thoughtfully considered the evidence as to whether the statements given by Roshell Flowers, Mack Flowers, Jr., and Donna Flowers (owners of the premises where the injury occurred and witnesses to the accident) were, indeed, taken in anticipation of litigation and concluded that they were not. It should be noted that the depositions of Roshell Flowers, Mack Flowers, Jr., and Donna Flowers had already been taken by Kimberly R. Sanders's counsel when the request to produce these statements was made. Two affidavits were produced by the insurance agent, Barbara Barrett, to support the refusal, under the work-product privilege, to produce the statements. In its response to the arguments in this petition, the trial judge filed an answer discussing these affidavits, which reads as follows:
 "In my examination of the Affidavits of Barbara Barrett, the claims adjuster, I noticed in the first Affidavit that she stated she had taken statements from Roshell Flowers, Mack Flowers, Jr. and Donna Flowers on August 12, 2005, but in the Amended Affidavit, she stated that she did not have a recorded statement from Roshell Flowers, but only from Mack Flowers, Jr. and Donna Flowers. In fact the Affidavits conflict with the extracts of the deposition of Roshell Flowers, in that she stated that she did give a statement to the insurance company.
 "From her Affidavits it would appear that the only document that Barbara Barrett had in her possession when she obtained the statements of Mack Flowers, Jr. and Donna Flowers on August 12, 2005 was a letter from the Plaintiff's attorney dated May 24, 2005, addressed *Page 227 
to Roshell's Cafe and Deli, advising that his client had suffered injuries arising out of an accident which occurred at Roshell's on April 6, 2005. At this time there was no fatality involved and she had no information about the accident and no other information about the injuries, including hospital bills or medical information. In fact there is no information in the Affidavit as to when Mrs. Barrett received the letter from the Plaintiff's attorney dated May 24, 2005 addressed to her insured, since her first letter to the Plaintiff's attorney is dated August 11, 2005.
 "Although the Affidavits state in several places that Mrs. Barrett took these statements on August 12, 2005, in anticipation of litigation, I feel that this is a self-serving statement with no foundation. Based on my experience on the bench and my practice as a member of the Bar, I know that when insurance companies receive a letter notifying them of an accident, they begin an investigation by taking statements as a matter of policy and part of their routine business in investigating the claim. It is not done in anticipation of litigation but simply to find out what witnesses, including its insured, know about the accident and the injuries in the accident. I did not accept Mrs. Barrett's assertions that she could anticipate litigation after receiving one letter from the Plaintiff's attorney and without any information from her insured or witnesses that the accident happened, how it happened and the extent of the injuries to the Plaintiff.
 "I did not accept the conclusion stated in Mrs. Barrett's affidavits that any time she gets a letter from an attorney who states that there are severe injuries and before she has any other information concerning liability or the injuries that any statements that she takes were made in anticipation of litigation. Without any of this additional information she would not even have known whether she was going to deny or admit the claim. This is apparent in her correspondence dated August 11, 2005 in which she requested medical information from the Plaintiff's attorney. She is merely gathering information on which to deny or admit the claim as a part of her investigation and not in anticipation of litigation."
Judge McDermott's answer at 3-5.
The above-quoted answer exemplifies the thoughtful exercise of the trial court's discretion for the purpose of determining whether the statements constituted protected trial-preparation materials under Rule 26(b)(3), Ala. R. Civ. P. The importance of the information sought is evident in the fact that the information could show inconsistent statements concerning the accident and how it occurred. Rule 613(a), Ala. R. Evid., provides that "[i]n examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown or disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel." I conclude that, in determining that Flowers had not met her burden of showing that the statements in question were made in anticipation of litigation, the trial court was properly exercising its discretion in ordering Flowers to produce the statements.
The constraints of the caselaw noted by the majority, see, e.g.,Ex parte Dillard Dep't Stores, Inc., 879 So.2d 1134,1136 (Ala. 2003); Ex parte Ocwen Fed. Bank, FSB,872 So.2d 810, 813 (Ala. 2003); Ex parte Alfab, Inc.,586 So.2d 889, 891 (Ala. 1991), are simply ignored in favor of an analysis in which the majority substitutes its discretion for that of the trial court in weighing the evidence as to whether the *Page 228 
statements constitute materials prepared in anticipation of litigation. In the past, this Court has wisely declined to establish a new interlocutory appellate process based on second-guessing the trial court's management of discovery based on the principle that, "[i]n light of the trial court's broad discretion concerning matters of discovery, we defer to the trial court's perception of the facts and procedural posture of the parties . . . ." Ex parte Alapati 826 So.2d 792,798 n. 2 (Ala. 2002) (discussing appellate review of the trial court's protective orders in matters of discovery). Because I cannot approve of abandoning this principle, I respectfully dissent.